## 64012. CLEVELAND v. AMERICAN MOTORISTS INSURANCE COMPANY.

SHULMAN, Presiding Judge.

Appellant's husband died on September 5, 1978, when the Georgia Power Company steam generating boiler upon which he was working exploded. Appellant brought suit against appellee, who had in effect at the time of the accident an insurance policy covering property loss to the boiler involved in the explosion. In this action she has alleged that her husband's death was proximately caused by appellee's negligent inspection of the subject boiler and that her husband and other employees of Georgia Power Company relied upon appellee's inspections of the subject boiler for the protection of their health and safety. This case is on appeal from the trial court's

grant of summary judgment to appellee. Appellant also cites as error the trial court's denial of her motion for partial summary judgment and the trial court's decision to overrule her objections to an affidavit offered by appellee in support of its motion for summary judgment.

The record demonstrates that the explosion in question, which occurred at Georgia Power Company's Plant Mitchell, may have been produced by a defective water tube within the boiler. A certified boiler inspector, who was an employee of appellee, deposed that prior to the explosion he had inspected the subject boiler on several occasions, the last being in May 1978, and that his inspections had included visual inspection of the water tubes. The insurance policy in question gave appellee the right to inspect boilers covered by its terms but provided that "[n]either the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that such object [being inspected] is safe or healthful." Appellee issued a "Certificate of Inspection" memorializing each inspection of the subject boiler and providing that the certificate was to be placed "in a conspicuous place under glass in the room containing the boiler or vessel . . ."

Affidavits and deposition testimony of the former plant manager, the superintendent of operations, and a boiler specialist at Plant Mitchell all state that these individuals did not rely on appellee's inspections for the safe maintenance and operation of the subject boiler. The affidavit of the current plant manager states that "[w]hile Georgia Power Company conducts its own safety program, it does also rely upon the inspections made by the insurance inspectors." An additional affidavit of an employee at the plant states that she "personally rel[ies] upon the reasonableness and efficiency of said [insurance] inspections and [is] aware that other employees rely upon reasonableness and efficiency of said inspections."

Appellee argues on appeal that the trial court properly granted summary judgment in its favor for two reasons: the record affirmatively demonstrates that there was no reliance upon the inspections by either Georgia Power Company or the deceased; and, the policy provision quoted above placed Georgia Power Company on notice that the insurance inspections were not made as safety inspections and could not be relied upon as such. We find both of these contentions to be in error and reverse the summary judgment in favor of appellee.

1. Georgia courts first recognized a cause of action in tort based upon negligent inspection by an insurance company, other than a workers' compensation carrier, in *Sims v. American Cas. Co.,* 131 Ga.

App. 461 (206 SE2d 121) affd. sub nom *Providence Wash. Ins. Co. v. Sims,* 232 Ga. 787 (209 SE2d 61). Reliance upon the insurance company's inspection has long been recognized as an essential element of this tort. See *Huggins v. Aetna Cas. &c. Co.,* 245 Ga. 248 (264 SE2d 191), and cases cited therein. However, "reliance by either the employee or the employer on [the insurance companies'] inspections is sufficient . . ." Id.

The record in this case discloses a genuine issue of fact as to the question of whether either appellant's decedent or Georgia Power Company relied on appellee's inspections. Appellee has not carried the heavy burden required by Code Ann. § 81A-156 of showing that neither the employer nor the deceased employee relied on the inspections. The affidavits of the deceased's co-employee and the current plant manager are sufficient to raise a fact issue on the question of reliance. An appellate court cannot pass on the weight and sufficiency of the evidence in support of a motion for summary judgment, and we do not intimate here that the evidence produced by appellant will be sufficient to carry her burden at trial. However, we are unable to hold that there is no genuine issue of fact in the record before us on the question of reliance.

Appellee has argued that this case fits squarely within the holding in *Argonaut Ins. Co. v. Clark,* 154 Ga. App. 183 (267 SE2d 797). We disagree. The record in *Argonaut* clearly demonstrated that the injured employee therein "complain[ed] only of the work activities and procedures specifically ordered by his employer and . . . both he and his employer had full knowledge of the work to be undertaken and the circumstances under which it was to be done." Id. p. 187. We agree that where the employer has not delegated supervisory duties to the insurance carrier, reliance on such inspections cannot be shown unless it is demonstrated " 'that there was an unsafe and concealed condition on the premises of which the safety inspector possessed or should have possessed a *superior* knowledge as a result of his inspections.' " *American Mut. &c. Ins. Co. v. Jones,* 157 Ga. App. 722 (278 SE2d 410). However, the present case does not fall within that class of cases represented by *Argonaut* and *American Mutual.* The record as it presently stands indicates that the accident in this case was the result of a rupture of a water tube within the boiler, which in turn resulted in a release of steam through the explosion door near the area where appellant's decedent was working. The record does not clearly demonstrate that appellant's decedent had actual knowledge of the defective tube, or that he had superior means of discovering the defect. The record amply demonstrates the existence of issues of fact concerning the deceased's knowledge, if any, of the defective tube and his opportunity, relative

to that of the safety inspector, to discover the defective tube.

2. Additionally, we do not agree that the contract provision relied upon by appellee precludes recovery by appellant for damages that may have been proximately caused by the alleged negligent inspections. Appellee cites Kennard v. Liberty Mut. Ins. Co., 277 S2d 170 (La. App. 1973); and Gerace v. Liberty Mut. Ins. Co., 264 F Supp. 95 (DC 1966), as supporting its position. Appellee's argument appears to be premised on the principle that a gratuitous undertaking, negligently performed and proximately resulting in injury to the plaintiff, will give rise to liability only if undertaken, at least in part, for the benefit of the employee. In Gerace, the court held that the inspections were undertaken by the liability insurance carrier therein solely "for the benefit of the insurer itself to reduce risks producing policy claims." *Sims v. Am. Cas. Co.,* supra, p. 473. In Kennard, the court held, after reversing its original decision on motion for rehearing, that a contract provision such as the one involved in the present case established that the insurer did not undertake the inspection for the employee's benefit, thereby precluding the employee from recovering damages allegedly resulting from the alleged negligent inspection.

The reasoning advanced by appellee based on Gerace and Kennard was specifically rejected in *Sims.* Addressing Gerace, the court stated in *Sims,* supra, p. 473: "The court grounded its decision on the dual considerations, first, that the inspection was undertaken for the benefit of the insurer itself to reduce risks producing policy claims, and second that a contrary result might deter safety inspections which should be favored as a matter of public policy. On balance, neither of these considerations seems persuasive to us. The first merely begs the question; the same risks that give rise to liability on the policy are the risks that produce personal injury because the injury yields the liability. On the second point, we cannot recommend negligent safety inspections as better than none at all." We do not interpret *Sims* and its progeny as permitting an insurer summarily to extract itself from the realm of negligent inspection actions brought by non-parties to the insurance contract merely by inserting into the insurance contract a clause stating that the inspections are being undertaken solely for risk management or other internal purposes.

This is not to imply that an insurer may never undertake inspections solely for its own benefit and not for the benefit of the employer, employee, or others. We do not read *Sims* and its progeny as precluding such a finding of fact in the appropriate case. There may be certain situations in which it may be determined as a matter of fact that the inspections were not conducted for the benefit of the injured party and, therefore, no reliance was warranted.

The record in the present case does not establish conclusively that the inspections were undertaken solely for the benefit of the insurer. The fact that the policy pursuant to which those inspections were made covered only boiler damage, and was not a general liability policy, is not conclusive. One of the involved insurers in *Sims* was the boiler carrier, and the court specifically held that the complaint therein stated a cause of action against all carriers other than the workers' compensation carrier to the extent it acted pursuant to the workers' compensation policy. *Sims,* supra, pp. 463, 478. Nor are appellee's supporting affidavits in combination with the policy provisions relied upon by appellee conclusive on this issue. The record in this case reveals some evidence of reliance on the part of Georgia Power Company and its employees. See Division 1 above. There is also an indication in the record that the inspections may have served an essential service to Georgia Power by providing a required certificate of inspection. " 'One who undertakes, gratuitously or for consideration, to render services to another *which he should recognize as necessary for the protection of a third person or his things,* is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking . . .' [Restatement 2d Torts § 342A]." (Emphasis supplied.) *Huggins v. Aetna Cas. &c. Co.,* supra, p. 249. We cannot state that the facts of the present case clearly demonstrate that appellee did not gratuitously perform inspection services in part for the benefit of Georgia Power Company or its employees. Accordingly, the trial court erred in granting summary judgment to appellee.

3. The trial court did not err in refusing to grant appellant's motion for partial summary judgment. The motion went to the third and fourth defenses raised affirmatively in appellee's amended answer. These defenses raise, respectively, the defenses that the death of appellant's decedent was the result of negligence of others and that the appellant's decedent and his employer knew of the defective condition in the subject boiler and did not rely on appellee's inspections. Neither of these defenses require affirmative pleading pursuant to Code Ann. § 81A-108 (c). Both involve questions of fact, i.e., whether the negligence of an entity other than appellee proximately caused the death of appellant's decedent, whether Georgia Power or appellant's decedent knew or should have known of the defective condition, and whether there was any reliance by either on appellee's inspections. The record reveals considerable evidence indicating that Georgia Power Company and its employees, including appellant's decedent, may have had some knowledge and expertise in boiler maintenance and repair and were responsible for the maintenance and repair of the subject boiler. The record does not

demonstrate the absence of genuine issues of material fact concerning the potential negligence of others, the knowledge of Georgia Power Company and its employees, and the reliance of Georgia Power Company and its employees on appellee's inspections. Accordingly, the trial court properly denied appellant's motion for partial summary judgment. Code Ann. § 81A-156.

4. Appellant's third and final enumeration of error charges that the trial court erred in failing to grant her objections to an affidavit offered in support of appellee's motion for summary judgment. In view of our holdings in Divisions 1 and 2 of this opinion, this enumeration is now moot.

*Judgment affirmed in part and reversed in part. Quillian, C. J., and Carley, J., concur.*

DECIDED SEPTEMBER 14, 1982—
REHEARINGS DENIED OCTOBER 6, 1982—

*Hilliard P. Burt, Frank C. Vann,* for appellant.
*O. Wayne Ellerbee, Frank S. Twitty,* for appellee.